ROBERT SALTS, APPELLANT, V. LANCASTER COUNTY, NEBRASKA, AND BERNIE HEIER ET AL., AS THE LANCASTER COUNTY BOARD OF COMMISSIONERS FOR LANCASTER COUNTY, NEBRASKA, APPELLEES.

697 N.W.2d 289·

Filed June 3, 2005. No. S-04-642.

Rebecca L. Gould, of Nebraska Appleseed Center for Law in the Public Interest, Welfare Due Process Project, for appellant.

Kristy Mundt, Deputy Lancaster County Attorney, and Julie Agena, Senior Certified Law Student, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In this appeal, Robert Salts contends that Lancaster County exceeded its statutory authority in establishing certain durational residency requirements for primary health care benefits through its general assistance program. We agree and reverse the decision of the district court, and remand the cause for further proceedings.

FACTS

On March 17, 2003, Salts moved to Lancaster County in order to receive substance abuse treatment at Cornhusker Place of Lincoln-Lancaster County, Inc. (Cornhusker Place). Immediately prior to this move, Salts lived in Beatrice for 1 month, Kearney for 3 months, and Lexington for 1½ years. On May 29, Salts applied for medical and dental benefits under Lancaster County's general assistance program to enable him to obtain primary health care for large tumors on his arm and rib cage, an ear infection, an ingrown toenail, and dental problems. General assistance programs are made available by each Nebraska county to provide benefits to indigent persons who are not eligible for other state and federal assistance programs. See Neb. Rev. Stat. §§ 68-104 to 68-156 (Reissue 2003).

Although Salts qualified as an indigent person under the general assistance guidelines promulgated by Lancaster County, his application was denied on the basis that he did not meet eligibility requirements with respect to residence as set forth in the Lancaster County General Assistance Guidelines (rev. 2003). Guideline 2:101 provides:

> **Residency**: An applicant must reside within the geographic boundaries of Lancaster County in order to make application through the Lincoln Office. Individuals residing outside Lancaster County should be referred to the appropriate county office for assistance. If an individual is not permanently residing in Nebraska and/or Lancaster County, temporary assistance may be granted provided all other eligibility criteria are met.

Guideline 3:101 provides:

**Residency**: An applicant must meet the requirements of 2:101. Applicants not residing in Lancaster County must also meet the following criteria:

1. The applicant did not enter Lancaster County for the sole purpose of obtaining medical care; and

2. The illness or injury for which medical assistance is requested arose in Lancaster County, Nebraska; and

3. The medical care is provided for a life threatening or life trauma condition.

Salts filed a timely appeal in which he alleged that the Lancaster County residency requirements were contrary to law. A hearing officer for the Lancaster County Board of Commissioners upheld the denial of Salts' application, and Salts then filed a timely appeal to the district court for Lancaster County. The district court affirmed the denial, reasoning that the applicable Nebraska statutes grant counties discretion in providing general assistance to nonresidents and that the eligibility requirements adopted by Lancaster County were within this statutory discretion. Salts filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

In his sole assignment of error, Salts assigns, restated, that the district court erred in holding that Lancaster County did not exceed its statutory authority in establishing the residency requirements for its general assistance program found in general assistance guidelines 2:101 and 3:101.

## STANDARD OF REVIEW

■ A judgment rendered or final order made by a district court may be reversed, vacated, or modified for errors appearing on the record. Neb. Rev. Stat. § 25-1911 (Reissue 1995).

■ Interpretation of statutes presents a question of law, and an appellate court is obligated to reach an independent conclusion, irrespective of the decision made by the court below. See *In re Claims Against Atlanta Elev., Inc.*, 268 Neb. 598, 685 N.W.2d 477 (2004).

## ANALYSIS

 Counties had no common-law duty to provide assistance to indigent persons. *Mary Lanning Memorial Hospital v. Clay County*, 170 Neb. 61, 101 N.W.2d 510 (1960). However, since the inception of our state, the county board by statute has been "made the overseer of the poor and the county has a mandatory duty to provide for poor persons whether they are residents or nonresidents of the county." *Creighton-Omaha Regional Health Care Corp. v. Douglas County*, 202 Neb. 686, 690, 277 N.W.2d 64, 67 (1979). See, *Mary Lanning Memorial Hospital v. Clay County, supra*; Rev. Stat. ch. 40, §§ 1-23 (1866). The current statutes governing county general assistance programs for the poor are codified at §§ 68-104 et seq. The extent of a county's duty to provide assistance to indigent persons must be determined by reference to the applicable statutes which create the duty. *Mary Lanning Memorial Hospital v. Clay County, supra*. A county is a political subdivision of the state and has only that power delegated to it by the Legislature. *Guenzel-Handlos v. County of Lancaster*, 265 Neb. 125, 655 N.W.2d 384 (2003). It follows that a county may not employ its rulemaking power to modify, alter, or enlarge portions of a statute pursuant to which it acts.

The issue in this case is whether Lancaster County exceeded its statutory authority by imposing certain durational residency requirements for primary health care benefits under its general assistance program. In upholding the validity of Lancaster County's residency requirements, the district court focused on a portion of § 68-114 which provides in part:

> Whenever any nonresident shall fall sick in any county in this state, not having money or property to pay his or her board, or whenever any poor person not having a legal settlement in the county is found in distress, without friends or money, so that he or she is likely to suffer, it shall be the duty of the county board to furnish such temporary assistance to such person as it shall deem necessary; and if any such person shall die, the county board shall provide all necessary means for a decent burial of such person.

In *Mary Lanning Memorial Hospital v. Clay County, supra*, this court held that § 68-114 applied to an indigent nonresident of the state who was injured while walking along a Nebraska highway.

In the instant case, the district court held that the statute also applied to a Nebraska resident who did not reside in the county in which he sought medical care under a general assistance program. The district court reasoned that § 68-114 gave Lancaster County "broad discretion on how it chooses to address the medical needs of nonresidents" and therefore upheld the county's denial of medical benefits to Salts because he was a nonresident of the county and his medical needs were not life-threatening. The district court agreed with the determination of the hearing examiner that Salts should apply for general assistance in Dawson County, where he had established legal settlement for purposes of general assistance, and request that he be permitted to remain in Lancaster County for treatment.

We agree with Salts' contention that § 68-114 should not be considered in isolation, but, rather, in conjunction with other statutory provisions which govern the provision of county general assistance benefits to indigent persons. A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. *Mogensen v. Board of Supervisors*, 268 Neb. 26, 679 N.W.2d 413 (2004). The starting point in our analysis is § 68-104, which obligates the county board of each county to "furnish such medical service as may be required for the poor of the county who are not eligible for other medical assistance programs and general assistance for the poor of the county." This statute further states that in providing such medical assistance, "the county board shall make use of any existing facilities, including tax-supported hospitals and charitable clinics so far as the same may be available."

Each Nebraska county is required by § 68-133(1) to "[p]rovide that all individuals desiring to make application for general assistance shall have opportunity to do so . . . ." Each county is further required by § 68-133(2) to provide a schedule of goods and services, including medical expenses, which are "necessary for the maintenance of minimum decency and health for families of various sizes, including single persons." Lancaster County provides certain primary health care benefits for persons participating in its general assistance program, as well as specialty physician services and hospital care when certified as "medically necessary" by the primary physician. Treatment for

a condition is considered medically necessary "if the condition will worsen without medical intervention and interfere with the client's self-sufficiency or ability to work." See Lancaster County General Assistance Guidelines 1:116. The record includes a letter from the medical director of Cornhusker Place dated July 24, 2003, verifying Salts' medical condition and stating that the nursing staff at Cornhusker Place has "made many, many attempts to get . . . Salts approved for General Assistance to help with all of his current medical needs without any success." The letter further indicated that Salts' tentative discharge from his long-term substance abuse treatment program was not scheduled until August or September 2004 and that the staff of Cornhusker Place was "at a loss in attempting to help this individual with his medical needs."

With respect to Nebraska residents, the place of "legal settlement" is an essential factor in determining responsibility for general assistance benefits. Section 68-131 states in part:

> When any poor person does not have a spouse, parent, or stepparent supporting him or her or is not eligible for other general assistance programs, the poor person shall receive such relief, referred to as general assistance for purposes of sections 68-131 to 68-148, out of the treasury of the county in which he or she has legal settlement at the time of applying for assistance, in the manner provided in sections 68-131 to 68-148.

The term "legal settlement" for purposes of all public assistance programs is defined by § 68-115 in part as follows:

> Every person, except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a legal settlement in such county.
>
> Every person who has resided one year continuously within the state, but not in any one county shall have a legal settlement in the county in which he or she has resided six months continuously.
>
> (2) The time during which a person has been an inmate of any public or private charitable or penal institution, or has received care at public expense in any type of care home, nursing home, or board and room facility licensed as such and caring for more than one patient or guest, and each

month during which he or she has received relief from private charity or the poor fund of any county shall be excluded in determining the time of residence hereunder, as referred to in subsection (1) of this section.

The significance of an indigent person's county of "legal settlement" is apparent from §§ 68-143 through 68-145. Section 68-143 provides that "[a]ny person becoming chargeable as a poor person in this state shall be chargeable as such in the county in which he or she has established a legal settlement as defined in section 68-115." Section 68-144 then provides:

If any person shall become chargeable in any county in which he or she has not established a legal settlement at the time of applying for aid, he or she shall be duly taken care of by the proper authority of the county where he or she may be found. It shall be the duty of the clerk of the county board to send a notice by mail to the clerk of the county board of the county in which such poor person has a legal settlement that such person has become chargeable as a poor person, and requesting the authorities of such county to promptly remove such poor person and to pay the expense accrued in taking care of him or her.

Section 68-145 provides:

If a poor person, by reason of sickness or disease, or by neglect of the authorities of the county in which he or she has a legal settlement, or for any other sufficient cause, cannot be removed, then the county taking charge of such individual may sue for, and recover from the county to which such individual belongs, the amount expended for and in behalf of such poor person and in taking care of such person.

In this case, it is undisputed that Salts met the financial prerequisites for entitlement to general assistance. The dispute arises from the fact that Salts' need for medical care arose while he was physically present in Lancaster County at a time when his place of "legal settlement" was Dawson County. Lancaster County argues that its duty under § 68-114 was to provide only that medical care which it deemed "necessary," which did not include treatment for medical conditions which were not life-threatening, and that therefore, it had no obligation to provide the medical care

needed by Salts. Thus, the issue presented is one of statutory interpretation, requiring our independent review.

A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *In re Guardianship & Conservatorship of Woltemath*, 268 Neb. 33, 680 N.W.2d 142 (2004); *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003). Moreover, a court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose. *City of Gordon v. Ruse*, 268 Neb. 686, 687 N.W.2d 182 (2004); *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). The statutory scheme summarized above clearly contemplates that a person eligible for general assistance benefits may apply for such benefits in a county other than his or her county of "legal settlement." Likewise, a county in which the eligible applicant has not established "legal settlement" may be responsible for providing necessary services, although it would then have a right to seek reimbursement from the county in which the recipient had legal settlement and which, under § 68-131, bears ultimate financial responsibility for such general assistance benefits. Construed as a whole, the only reasonable interpretation of the general assistance statutes is that a county must provide to all eligible persons located in the county that assistance which is necessary to maintain minimum health and decency, subject to its right to seek financial reimbursement from another county in which a recipient has "legal settlement." The phrase "shall deem necessary" in § 68-114 does not authorize a county to provide a level of medical assistance to nonresidents of the county which is different from that which it provides to its own eligible residents. Rather, we conclude that the general assistance statutes obligate each county to provide to all eligible persons, whether or not they are residents of that county, the minimum level of care which it has undertaken pursuant to § 68-133(2). This statutory interpretation should not impose an undue financial burden on those counties having a concentration of medical facilities because of the requirement that general assistance benefits are to be paid "out of the treasury of the county in which [the recipient] has legal settlement at the time of applying for assistance," and because a

county providing necessary medical care through its general assistance program has a right of reimbursement from the recipient's county of legal settlement. See §§ 68-131, 68-144, and 68-145. Based upon our independent review, we conclude that the district court erred in determining that § 68-114 granted the county discretion to adopt the Lancaster County General Assistance Guidelines 2:101 and 3:101.

## CONCLUSION
For the reasons set forth, we reverse the judgment of the district court and remand the cause to the district court with directions to reverse the determination of the Lancaster County Board of Commissioners and remand the matter to that body for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.