STATE OF NEBRASKA, APPELLANT, V.
THE COUNTY OF LANCASTER, APPELLEE.

721 N.W.2d 644

Filed September 29, 2006.   No. S-05-520.

Jon Bruning, Attorney General, and Ronald L. Sanchez, Special Assistant Attorney General, for appellant.

Gary E. Lacey, Lancaster County Attorney, and Kristy Mundt for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Neb. Rev. Stat. § 29-1823(1) (Cum. Supp. 2004) authorizes a district court in a criminal proceeding, when it appears the defendant may be mentally incompetent to stand trial, to order a mental examination of the accused at county expense. The question presented in this appeal is whether, if the examination is performed by a state hospital, the cost of the examination can be billed directly to the county or whether the claim must first be submitted to the district court for certification to the county board.

## BACKGROUND

The underlying facts of this case are not disputed. Travis M., a resident of Lancaster County, Nebraska, was charged in the Lancaster County District Court with four counts of terroristic threats and one count of fleeing to avoid arrest. The district court, in the criminal proceeding, ordered on March 10, 2003, that Travis be committed to the Lincoln Regional Center (LRC) for a competency evaluation. The LRC is a psychiatric hospital owned by the State and administered and operated by the Nebraska Department of Health and Human Services (DHHS), a state agency. See Neb. Rev. Stat. § 83-305 (Cum. Supp. 2004).

Travis was admitted to the LRC, pursuant to the district court's order, on March 18, 2003, and remained there until June 4, when the court found that Travis was mentally incompetent to stand trial. However, the district court found a substantial probability that Travis would become competent in the foreseeable future and ordered commitment to the LRC for appropriate treatment until the disability was removed.

Between March 18 and April 30, 2003, a total of 44 days, Travis was held in the "forensic unit" of the LRC. No other time period is at issue in this appeal. The State billed Lancaster County for Travis' care during that time at the rate of $286 per day, for a total of $12,584. That represented the standard rate established by DHHS for such care and was not based on any individualized record of the care Travis received.

The claim was submitted to the Lancaster County clerk and considered by the Lancaster County Board of Commissioners on May 27, 2003. The board denied the claim, having been advised by a deputy county attorney that the State's claim should have been submitted to the district court in the criminal case for its review, instead of being sent directly to the county.

The State filed a separately docketed petition in error in the district court with respect to the denial of its claim. The State argued that pursuant to Neb. Rev. Stat. § 83-365 (Reissue 1999), DHHS was authorized to set the costs for treatment of patients in state institutions, including the LRC. The county, however, argued that the relevant statute was § 29-1823(1), which provides, in relevant part, that

> [i]f at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district court by the county attorney, by the accused, or by any person for the accused. The judge of the district court of the county where the accused is to be tried shall have the authority to determine whether or not the accused is competent to stand trial. The district judge may also cause such medical, psychiatric, or psychological examination of the accused to be made as he or she deems warranted and hold such hearing as he or she deems necessary. *The cost of the examination, when ordered by the court, shall be the expense of the county in which the crime is charged. The district judge may allow any physician, psychiatrist, or psychologist a reasonable fee for his or her services, which amount, when determined by the district judge, shall be certified to the county board which shall cause payment to be made.*

(Emphasis supplied.) The county insisted that pursuant to § 29-1823(1), the State was required to submit its claim to the district court in the criminal proceeding and the district court could then certify a reasonable fee to the county.

The district court, in the error proceeding, agreed with the county. The court determined that when an individual is committed for evaluation pursuant to § 29-1823(1), the cost associated with that evaluation is to be submitted to the district court that ordered the commitment. The court noted that while it might

be that DHHS cannot practically separate out its billing time on an individualized basis, that issue should initially be addressed to the district court in the criminal proceeding. Therefore, the court affirmed the decision of the county board.

## ASSIGNMENT OF ERROR

The State assigns, as consolidated, that the district court erred by holding that § 29-1823(1) required the State's claim for an inpatient competency evaluation to be submitted to the district court in the criminal proceeding, thus failing to enter judgment in favor of the State.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Reed v. State, ante* p. 8, 717 N.W.2d 899 (2006).

## ANALYSIS

As previously noted, § 29-1823(1) provides, in relevant part, that when the district court in a criminal proceeding orders a competency evaluation, the examination is performed at county expense and "[t]he district judge may allow any physician, psychiatrist, or psychologist a reasonable fee for his or her services, which amount, when determined by the district judge, shall be certified to the county board which shall cause payment to be made." It is apparent that as a general matter, the fee to be assessed for a competency evaluation is determined by the district court in the criminal proceeding and certified to the county board for payment. The county does not dispute that it ultimately must pay a reasonable fee for the cost of the evaluation. The issue here is procedural—whether § 29-1823(1) is the exclusive provision by which the State can obtain payment from the county or whether § 29-1823(1) is applicable at all when a competency evaluation is performed by a state hospital.

■ The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed in pari materia to determine the intent of

the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004), *cert. denied* 544 U.S. 986, 125 S. Ct. 1858, 161 L. Ed. 2d 744 (2005). The Nebraska Mental Health Commitment Act, Neb. Rev. Stat. §§ 71-901 to 71-962 (Cum. Supp. 2004 & Supp. 2005), expressly addresses who is responsible for the expenses associated with the involuntary confinement and subsequent treatment of the mentally ill, and it is in that context that § 29-1823(1) should be considered.

In most instances, the process of involuntary commitment is initiated when the county attorney determines that a subject is mentally ill and dangerous, such that there is a substantial risk of serious harm to the subject or another person or persons, and a treatment order from the county mental health board is necessary to prevent the harm. In such cases, the county attorney can file a petition in the district court to initiate proceedings before the county mental health board. See § 71-921. When there is probable cause to believe that the harm may occur before mental health board proceedings may be initiated to obtain custody of the subject, then the subject can be placed in emergency protective custody. See §§ 71-919 and 71-922. "Each county shall make arrangements with appropriate medical facilities inside or outside the county for such purpose and shall pay the cost of the emergency protective custody of persons from such county in such facilities." *Id.* At the conclusion of a mental health board hearing, if the board determines that the subject should remain in custody pending the entry of a treatment order, the subject can be retained in custody at county expense. The county is similarly directed to make arrangements in advance for such confinement. See § 71-926.

A mental health board, in determining whether a subject is mentally ill and dangerous, may request the assistance of DHHS or any other person or private entity, and may require the subject to submit to reasonable psychiatric or psychological evaluation to assist the board in preparing a treatment order. See § 71-925(7). "Any mental health professional conducting such evaluation at the request of the mental health board shall be compensated by the county or counties served by such board at a rate determined by the district judge . . . ." *Id.*

Similarly, when counsel is appointed to represent an indigent subject in proceedings under the Nebraska Mental Health Commitment Act, appointed counsel "shall apply to the court in which his or her appointment is recorded for fees for services performed." See § 71-947. The court shall fix reasonable fees, to be paid by the county in the amount determined by the court. See *id.* Counsel may also apply for a separate professional examination for the subject and "shall be reimbursed for costs incurred in securing such separate examination or examinations or in having other professional persons as witnesses before the mental health board" in an amount fixed by the court. See *id.*

Alternatively, an indigent subject or his or her counsel can apply to a mental health board for the expenses necessary to effectively represent the subject, including an independent evaluation of the subject's mental condition. See § 71-948. "The board shall then fix reasonable fees and expenses, and the county board shall allow payment to such person in the full amount fixed by the board." See *id.*

When a subject is committed to custody by a mental health board for mental health treatment at a state hospital, the cost is borne by the patient and his or her relatives. See Neb. Rev. Stat. § 83-364 (Cum. Supp. 2004). When the full cost is not paid by the patient or his or her relatives within 30 days of the receipt of such care, the county of the patient's residence pays a portion of the unpaid cost, in an amount specified by statute. See Neb. Rev. Stat. § 83-376 (Cum. Supp. 2004). With respect to the LRC, the county pays the first $15 per day of the unpaid cost and the balance of the unpaid cost is borne by the State. See *id.*

Pursuant to § 29-1823(1), if the district court in a criminal proceeding determines that the accused is mentally incompetent to stand trial, but there is a substantial probability that the accused will become competent in the foreseeable future, the court orders the accused to be committed to a state hospital for the mentally ill or some other state-owned or state-operated facility for appropriate treatment until the disability is removed. The State is responsible for the cost of the maintenance and care for the accused during the period of time ordered by the court for treatment to remove the disability. See § 29-1823(3). A review

hearing is held within 6 months, and every 6 months thereafter, to determine whether the accused is still incompetent to stand trial or whether there is a substantial probability that the accused will become competent within the foreseeable future. See § 29-1823(2). Should it be determined at any time that there is *not* a substantial probability that the accused will become competent within the foreseeable future, then the State is required to either release the accused or commence civil commitment proceedings. See § 29-1823(3).

In arguing that § 29-1823(1) does not apply to it, the State relies in large measure on § 83-365, which provides in relevant part:

> The Department of Health and Human Services shall periodically determine the individual cost, exclusive of the cost of education, for the care, support, maintenance, and treatment of the patients in each state institution and for persons receiving treatment prescribed by an institution following release or without being admitted as a resident patient. In making such determinations, the department may use averaging methods for each institution if, in the judgment of the director, it is not practicable to compute the cost for each patient.

The State argues that § 83-365 is part of a legislative policy empowering the executive branch of government to establish the rate to be charged for the care provided by state hospitals. The State also argues that there is no indication that § 29-1823 is intended to preclude the State's use of the general county claims provision, Neb. Rev. Stat. § 23-135 (Cum. Supp. 2004).

But § 29-1823 is part of a comprehensive scheme for allocating the costs of mental health treatment and evaluation, and contrary to the State's suggestion, there is no aspect of that scheme which permits the State to unilaterally determine the financial liability of another responsible party. For the general costs of care, the county is required to make arrangements with mental health care providers for emergency confinement and confinement pending a mental health board treatment order, which arrangements allow the county to determine in advance where subjects will be confined and what the confinement will cost the county. When other costs of mental health commitment

proceedings are allocated to the county, in each instance, those costs are subject to judicial or administrative approval.

Thus, the statutory scheme clearly evinces the Legislature's intent to require judicial· or administrative approval when the county is charged for expenses it did not incur. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme and so that effect is given to every provision. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005). The only interpretation of § 29-1823 consistent with the statutory scheme is that it requires the court to approve the expense of a competency evaluation—a liability incurred, not by the action of the county, but solely by an order of the court. The State's reasoning, that § 83-365 overrides § 29-1823(1) and that § 23-135 remains available as a means of demanding payment, would have the effect of nullifying § 29-1823(1) and many of the other provisions of the Nebraska Mental Health Commitment Act. Furthermore, if a conflict exists between two statutes on the same subject matter, the special provisions of a statute prevail over the general provisions in the same or other statutes. *Mogensen v. Board of Supervisors*, 268 Neb. 26, 679 N.W.2d 413 (2004). Here, the general power of the State to establish rates at state hospitals, and the general provision for claims made to a county board, are subject to the specific provisions of § 29-1823(1).

The State also argues that § 29-1823(1) does not apply to the LRC because the statute provides that the court may allow "any physician, psychiatrist, or psychologist a reasonable fee for his or her services" and, according to the State, the LRC is not a physician, psychiatrist, or psychologist. This, however, is not a reasonable reading of the statutory language. A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose. *Salts v. Lancaster Cty.*, 269 Neb. 948, 697 N.W.2d 289 (2005). The statute's purpose is to allow the court to initiate a professional mental evaluation of an accused who may be incompetent to stand trial—in other words, to obtain professional mental services from a physician, psychiatrist, or psychologist. The statute obviously encompasses payment for such services,

regardless of whether the payment is issued directly to a "physician, psychiatrist, or psychologist," or his or her employer.

■ Finally, the State argues that since § 29-1823(1) provides that the court "may allow" a fee for the competency evaluation, the statute is permissive, and not mandatory. Generally, the word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. When the word "may" appears, permissive or discretionary action is presumed. *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005). But the State misunderstands the nature of the discretion afforded by the statute. The district court may decide to allow a requested fee for a competency evaluation, or, on the other hand, the court may decide not to allow the fee requested. The fact that the court has discretion in ordering payment, however, does not give the *parties* discretion with respect to whether they are required to follow the provisions of the statute. Nothing in the statute's use of the word "may" suggests that the State has the discretion not to follow the procedure established for obtaining payment.

■ In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006). The State's arguments provide us with no basis to set aside the plain meaning of § 29-1823(1); thus, we find no merit to the State's sole assignment of error.

## CONCLUSION

Pursuant to § 29-1823(1), payment for a competency evaluation, performed pursuant to a district court's order in a criminal proceeding, is determined by the court and certified by the court to the county board. The State's general authority to establish rates to be charged by state hospitals does not override the specific provisions of § 29-1823(1), which both the county board and the court in this error proceeding correctly understood to require that the costs of a competency evaluation be determined in the criminal proceeding by the court that ordered the evaluation. The judgment of the court in this proceeding is, therefore, affirmed.

AFFIRMED.

HENDRY, C.J., not participating.