16 Neb. App. 854
DAVID E. LAWSON, APPELLANT,
v.
BRENDA LAWSON, APPELLEE.
No. A-07-1158.
Court of Appeals of Nebraska
Filed July 22, 2008.
Charles M. Bressman, Jr., of Anderson & Bressman Law Firm, P.C., L.L.O., for appellant.
No appearance for appellee.
Julie E. Bear, of Reinsch, Slattery & Bear, P.C., L.L.O., for children.
INBODY, Chief Judge, and IRWIN and CARLSON, Judges.
INBODY, Chief Judge.

INTRODUCTION
David E. Lawson contends that the Cass County District Court erred in denying his motion for enforcement of visitation and application for contempt against his ex-wife, Brenda Lawson, for allegedly interfering with his visitation rights. For the reasons set forth herein, we affirm as modified, and remand the cause with directions.

STATEMENT OF FACTS
David and Brenda were divorced on August 29, 2005, with Brenda granted custody of the parties' two minor children, Davis E. Lawson, born August 29, 1992, and Charlene M. Lawson, born August 27, 2001, subject to David's rights of visitation pursuant to the parties' stipulated parenting plan which was incorporated, by reference, into the dissolution decree. David's visitation consisted of one evening during the week, every other week, from 5 until 8 p.m.; every other weekend from Friday at 5 p.m. until Sunday at 8 p.m.; and alternating holidays. Each party was also granted unlimited telephone contact when the children were not in that party's physical custody. The divorce was contentious, and David and Brenda's relationship has continued to deteriorate since the entry of the dissolution decree. David's relationship with his children deteriorated following the divorce also, but Brenda and David each contend that the other was mostly to blame for the decline.
Almost 1 year after the divorce, on August 9, 2006, David filed a motion for enforcement of visitation pursuant to Neb. Rev. Stat. § 42-364.15 (Reissue 2004), alleging that Brenda has engaged in parental alienation and interfered with his relationship with the parties' minor children in the following ways, among others: by repeatedly making derogatory, demeaning, and disparaging statements about David; by making false allegations and filing reports with governmental agencies relating to alleged abuse of the parties' children; by mailing correspondence to David with stamps stating `Stop Family Violence" in a manner intended to harass and/or provoke him; by refusing to have the minor children available for visitation; and in moving from Brenda's residence and refusing to provide David with a telephone number or an address where he can contact the children. David requested enforcement of the decree, that Brenda pay a bond to insure her compliance with the provisions of the dissolution decree, attorney fees and costs, and further, any other relief as the court deemed equitable. A hearing thereon was held on August 2 and September 6, 2007.
Barbara Jean Ray testified that she and her husband socialized with the Lawsons when the Lawsons were married. She testified that prior to the divorce, Davis was respectful toward David and well behaved and that David and Davis spent time together camping and hunting. Likewise, Mark Tincher testified that he has known the Lawsons for 10 to 12 years. He testified that prior to the divorce, Davis was respectful and well mannered and that when he observed Davis and David together, they acted appropriately and appeared to have fun together.
David testified that prior to the parties' divorce, he spent a lot of time with his children and they had strong, good relationships. David stated that he and Davis used to spend time together mushroom hunting, camping, riding four-wheelers, and attending auctions and that he taught Davis how to drive a pickup and how to work on equipment. David stated that he reviewed Davis' report cards, helped him with his homework, and met with his teachers. David and Charlene spent time together going to a few auctions, mushroom hunting, playing with dogs, and riding some of David's work equipment.
David claims that since the parties' divorce, Brenda has interfered with his visitation on more than one occasion. Brenda denies interfering with David's visitation and claims that it is not true that she wants to keep Davis and Charlene from seeing David, although she believed that the last time that David had visitation with his children was at the end of 2006.
Brenda admitted that she has told several people, including professionals, that David abused her and the minor children. She further reported that she suspected that David is a child abuser. She claimed that she saw David abuse Davis both physically and verbally. She further admitted that after she moved into a shelter during the summer of 2006, David did not have any visitation with the children for several months. David testified that during the time Charlene made allegations to Child Protective Services, which charges were dismissed, David received very little visitation for a period of 9 months. David testified that since the entry of the dissolution decree, he has had a total of six visitations with Davis in 3 years.
According to Brenda, she would drive the children to visitation with David, and Davis, who was 13 or 14 years old, would refuse to get out of the car. She stated that although she would tell him that he needed to go because the visitations were court ordered and she would promise him a "pizza night," Davis still refused to go.
Despite the fact that there was court-ordered counseling with Dr. Joseph Rizzo, Brenda canceled several appointments with him and took the minor children to other counselors without notifying David. According to David, he missed the first therapeutic visitation with Charlene because he did not understand that the session was scheduled and because he was waiting for confirmation of the appointment, which never came. Since then, David has had two visits with Charlene at the therapist's office. According to David, he and Charlene got along fine and were happy to see each other.
David admitted that during the last 2 years, he had not sent his children any birthday gifts or cards or Christmas gifts, but stated that he did not know where they lived. He further stated that he did not call his children, because until 3 or 4 months ago, he did not have any telephone numbers for them. He further testified that since he has obtained the telephone numbers, he has not called, because he is afraid that he will get arrested. David testified that although he was recently married, he did not invite his children to his wedding.
David testified that he has disciplined Davis by talking to him, but that he has also spanked him on the bottom with his hand and with a belt. David further testified that Brenda often sent him letters with stamps on them that stated "Stop Family Violence."
Brenda acknowledged that she does not have a disability which prevents her from working, but that she is not working because she is a full-time student. She further admitted that David paid her $25,000 pursuant to the dissolution decree, the day after the decree was entered. Despite being ordered by the court to pay $1,500 of Dr. Glenda Cottam's fees, at the time of the August 2007 hearing, Brenda had not paid any of that amount. However, Brenda admitted that David was current on his child support. Further, David has paid for all of the counseling services by Rizzo and he paid the $1,500 court-ordered fee for Cottam.
Rizzo, a licensed clinical psychologist, testified that his practice includes helping people dealing with family problems, divorce problems, and reunification of children following a divorce. Rizzo testified that he was retained to make an assessment and to try to assist in the relationship between David and the minor children. Rizzo testified that Brenda and David's divorce was a very high conflict divorce and that Davis was an anxious and very angry child and was very frank about not wanting to see David. Rizzo testified that Brenda was very injured and bitter toward David and that Brenda was not following the parenting plan. Further, Rizzo noted that in July 2007, Davis' anger was becoming more intense toward David, and that because there was no real contact with David which would account for the increase, the increased anger had to be attributable to a different source. Rizzo further testified that parental alienation was occurring with respect to Brenda's alienating the minor children against David. Rizzo also testified that during one of Davis' final meetings with him, Davis confronted him about one of the letters that Rizzo had sent to Davis' parents; Davis told Rizzo that Brenda had given Davis the letter and that he had read it.
The other licensed clinical psychologist, Cottam, submitted a report which was received into evidence. This report reflects, in part:
I believe that this case may be rather typical for a high conflict family. My impression is that [David] probably does have an anger problem (as well as an addiction to Percocet)and has said/done things to [Brenda] and possibly to the childrenso that Davis may have some genuine dislike of his father. [David] probably lacks insight into how his own behaviors have contributed to this sad family situationin which his son does not want to see him. On the other hand, [Brenda] is obviously so angry, vindictive, and dramatic that I believe she has probably exaggerated her claims of being a "victim"to her own benefit. I have no doubt that she has shared her negative impressions of [David] with one or both of the children. I believe she will try to sabotage any effort to improve relations between [David] and the children. I perceive both parents as being very "gamey"despite their best efforts to make a positive impression in my office. Both parents need individual counseling. The children are horribly in the middle of this conflictand, if they are like most children, they will have the strongest alliance to the parent with whom they reside in this case, [Brenda]."
Davis, who was 15 years old at the time of the hearing, testified that he had been both physically and verbally abused by David a couple of times each week for as long as he could remember. Davis further testified that he had personally witnessed David physically abuse Brenda. Davis testified that he was hit with screwdrivers and rubber tie-down straps. Davis described one occasion when he accidentally drove a four-wheeler over a stick and got the stick lodged in the four-wheeler's fan. Davis claims that upon removing the stick from the four-wheeler, David used the stick to hit him on the back and the arms.
Davis further testified that he did not wish to exercise any form of visitation with David at that time, including therapeutic visitation, because Davis did not feel that the therapeutic visitation was helpful in repairing his relationship with David. Davis acknowledged walking out of the scheduled visits with Rizzo.
Davis claims that Brenda encourages him to attend visitations with David, but that he does not want to talk to David, attend visitations, or have a good relationship with David because of things that David has done in the past. He further claims that Brenda never says bad things about David to him and never talks about David. Davis further stated that Brenda showed him one of the letters written by Rizzo, but Davis stated that he did not read the letter. Brenda testified that she allowed Davis to read correspondence from Rizzo.
On October 4, 2007, the district court declined to hold Brenda in contempt, finding that
although the court believes that [Brenda] has helped sabotage [David's relationship] with the children, the court further believes that [David] is equally at fault with regard to creating the problems that are confronting him with regard to visitations at this time. Accordingly, the court does not find that it would be proper to find [Brenda] in contempt to force the visitations. . . . [T]he same may be counterproductive at this time without further intervention and the restoration of a relationship between [David] and, in particular, Davis.
Regarding the motion to enforce visitation, the court found that Brenda shall not interfere with David's relationship with the minor children, that she shall not make any negative remarks about David to the minor children, and that she shall encourage the children to exercise their visitations with David. No other relief was granted pursuant to David's motion to enforce visitation. David has timely appealed to this court.

ASSIGNMENTS OF ERROR
On appeal, David contends that the district court erred in failing to grant his motion for enforcement of visitation and in finding that Brenda was not in contempt of court.

STANDARD OF REVIEW
[1,2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007).

ANALYSIS
Denial of Motion to Enforce Visitation.
David contends that the court erred in failing to grant his motion for enforcement of visitation.
David filed his motion for enforcement of visitation under § 42-364.15, which provides:
In any proceeding when a court has ordered a parent to pay, temporarily or permanently, an amount for the support of a minor child and in the same proceeding has ordered visitation with any minor child on behalf of such parent the court shall enforce its visitation orders as follows:
(1) Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, the court shall enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to visitation. The court may use contempt powers to enforce its court orders relating to visitation. The court may require either parent to file a bond or otherwise give security to insure his or her compliance with court order provisions.
(2) Costs, including reasonable attorney's fees, may be taxed against a party found to be in contempt pursuant to this section.
Because David brought his motion pursuant to this section, the district court was limited in the relief which it was authorized by statute to grant. The district court found that Brenda shall not interfere with David's relationship with the minor children, that she shall not make any negative remarks about David to the minor children, and that she shall encourage the children to exercise their visitations with David. However, the court did not grant any other relief pursuant to David's motion to enforce visitation. Based upon our de novo review of the record, and the specific circumstances present in this case, we find that the district court fashioned relief in a manner which the court found was in the minor children's best interests. We cannot deem the court's determination was an abuse of discretion.
Failure to Find Brenda in Contempt.
David contends that the district court erred in failing to find Brenda in contempt of court for interfering with his visitation.
[3-6] An appellate court, reviewing a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. Klinginsmith v. Wichmann, 252 Neb. 889, 567 N.W.2d 172 (1997); Novak v. Novak, 245 Neb. 366, 513 N.W.2d 303 (1994). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Klinginsmith v. Wichmann, supra; Law Offices of Ronald J. Palagi v. Dolan, 251 Neb. 457, 558 N.W.2d 303 (1997); Dillard Dept. Stores v. Polinsky, 247 Neb. 821, 530 N.W.2d 637 (1995). A trial court's factual finding in a contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. Klinginsmith v. Wichmann, supra; Novak v. Novak, supra. A party's contempt must be established by proof beyond a reasonable doubt. Klinginsmith v. Wichmann, supra.
In the instant case, the district court declined to find Brenda in contempt, finding that
although the court believes that [Brenda] has helped sabotage [David's relationship] with the children, the court further believes that [David] is equally at fault with regard to creating the problems that are confronting him with regard to visitations at this time. Accordingly, the court does not find that it would be proper to find [Brenda] in contempt to force the visitations. . . . [T]he same may be counterproductive at this time without further intervention and the restoration of a relationship between [David] and, in particular, Davis.
We cannot say that this determination was arbitrary, capricious, or unreasonable. Therefore, we affirm the district court's decision in this regard. However, because we believe that Brenda needs some motivation in order to adhere to her obligations under the dissolution decree and the district court's October 4, 2007, order, we find that she shall be required to post a cash bond to ensure her compliance with the district court's orders. If Brenda does not comply with the district court's orders, she is subject to forfeiting the bond. We remand the cause to the district court for a determination of an appropriate amount for the cash bond.

CONCLUSION
In sum, we find that due to the specific circumstances present in this case, the district court did not abuse its discretion in failing to grant David broader relief pursuant to his motion to enforce visitation. We further find that the district court's failure to find Brenda in contempt was not arbitrary, capricious, or unreasonable. However, we do find that Brenda should be required to post a cash bond to ensure her compliance with the district court's orders, and we remand the cause for the district court to determine an appropriate amount of that cash bond. Therefore, the order of the district court is affirmed as modified and this cause is remanded with directions.
AFFIRMED AS MODIFIED, AND CAUSE REMANDED WITH DIRECTIONS.
IRWIN, Judge, concurring in part, and in part dissenting.
I concur with the majority's analysis and affirmance of the district court's denial of David's motion for enforcement of visitation and refusal to find Brenda in contempt of court. Despite agreeing with the majority on all of these findings, I write separately because I cannot agree with the final paragraph of analysis in the majority opinion, in which paragraph the majority, without explanation, concludes that Brenda should be required to post a cash bond to ensure compliance with the very orders that were the subject of the enforcement and contempt issues.
With respect to David's motion for enforcement of visitation, I agree that the record presented supports the conclusion that the district court fashioned relief in a manner which was in the minor children's best interests and did not abuse its discretion. The majority notes the requirements of Neb. Rev. Stat. § 42-364.15 (Reissue 2004) and notes that consistent with that statute, the district court ordered Brenda to not interfere with David's relationship with the children, to not make any negative remarks about David to the children, and to encourage the children to exercise visitations with David. The majority further concludes that under the record presented and "the specific circumstances present in this case," the relief fashioned was appropriate. Thus, there was no abuse of discretion or other error concerning the district court's ruling on the motion for enforcement of visitation. I agree.
With respect to the contempt issue, I also agree that the record presented supports the conclusion that the district court's decision was not arbitrary, capricious, or unreasonable, and the record supports the district court's finding that the visitation problems have been the fault of both parties. Indeed, the lengthy factual background provided by the majority supports the district court's conclusions. The district court was presented with evidence that Brenda had encouraged the children to exercise visitation, despite her assertions that David had abused them. There was evidence presented that Davis refused to go, despite Brenda's encouragement. Davis was 15 years old at the time of the hearing, and he testified that he had been both physically and verbally abused by David weekly for as long as he could remember, and Davis recounted incidents involving being struck with screwdrivers and rubber tie-down straps. Davis testified that he did not wish to exercise any form of visitation with David. Further, there was conflicting psychological evidence presented, including one report that David has an anger problem contributing to Davis' dislike and desire not to exercise visitation. All of this evidence led the majority to affirm the district court's finding that both parties have been at fault and that it was inappropriate to hold Brenda in contempt. I agree.
Despite affirming every finding and conclusion of the district court, in the final paragraph of the analysis, the majority determines that Brenda should be required to post a cash bond to ensure her compliance with the visitation order, but provides no rationale or explanation to support such a conclusion. Upon a de novo review of the record presented in this case, the majority has concluded that there was no abuse of discretion, no error appearing on the record, and no clearly erroneous factual determination. The majority has concluded that the decision of the district court was supported by competent evidence and was not arbitrary, capricious, or unreasonable. The majority has affirmed the district court's determination that both parties were at fault concerning the visitation issues, and the evidence presented and recounted in the factual background of the opinion supports that conclusion. Despite all of this, the majority modifies the district court's order and requires Brenda to post a cash bond to secure her compliance with the visitation order.
Section 42-364.15 provides that the district court "may" require either parent to file a bond or otherwise give security to ensure his or her compliance with the court's visitation orders. In this case, the district court chose not to require either parent to file a bond or other security, which was consistent with the court's finding that both parties were at fault and that Brenda was not in contempt. It is fundamental in this state that the word "may," when used in a statute, is given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. State v. County of Lancaster, 272 Neb. 376, 721 N.W.2d 644 (2006). When the word "may" appears, permissive or discretionary action is presumed. Id. There is no assertion that any statutory objective would be manifestly defeated by giving the word "may" in § 42-364.15 its ordinary and discretionary meaning. As such, § 42-364.15 grants the district court discretion to impose a bond, and its decision in that regard should be upheld in the absence of an abuse of that discretion, something that the majority has not suggested in its analysis.
Section 42-364.15 required the district court to enter such orders as were necessary to enforce the rights of the parents. The court did this, and this court has found the court's orders to be appropriate. Section 42-364.15 grants the district court discretion to use contempt powers to enforce its orders. The court declined to exercise this discretionary power, finding that both parties were at fault, and this court has found that the court did not abuse its discretion or otherwise err in so finding. Section 42-365.15 also grants the district court discretion to require a bond to secure compliance with its orders. The court declined to exercise this discretionary power, and without a finding that the court abused its discretion in some fashion, this court should affirm that decision as well. Inasmuch as the majority has found no abuse of discretionand no clear error or other error appearing on the recordand has provided no rationale to support imposing a bond in a case where both parties were at fault and evidence was presented to support the district court's holdings, I cannot join in the majority's imposition of a bond where the district court declined to impose one. I would affirm the district court's order in its entirety.