DeWayne Hanchera, appellant, v. Board of Adjustment, Red Willow County, Nebraska, appellee.

694 N.W.2d 641

Filed April 8, 2005.   No. S-03-1175.

Steven M. Virgil and Amy Svoboda for appellant.

David A. Jarecke, of Crosby Guenzel, L.L.P., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

DeWayne Hanchera filed a complaint with the Red Willow County Board of Commissioners (Board of Commissioners) concerning Furnas County Farms' undertaking of the erection and operation of confined animal feeding facilities at two locations—commonly known as the Kircher and Geihsler properties. The Board of Commissioners referred the matter to the Red Willow County zoning administrator (Zoning Administrator). On October 31, 2001, the Zoning Administrator filed a memorandum with the Board of Commissioners containing her findings. She found that on the two listed properties,

> both properties had structure prior to October 16, 2001. Concrete was delivered to one property on October 13, 2001 and the other on October 15, 2001. Because of this factor, which I might add has been found to legally be considered substantial construction, both properties fall outside of the Zoning Regulations enacted on October 16, 2001.

Hanchera appealed the decision of the Zoning Administrator to the Red Willow County Board of Adjustment (Board of Adjustment). On February 19, 2002, the Board of Adjustment affirmed the decision of the Zoning Administrator. Hanchera then appealed the Board of Adjustment's decision to the Red Willow County District Court pursuant to Neb. Rev. Stat. § 23-168.04 (Reissue 1997). On September 15, 2003, the district court found that the evidence established that substantial construction to the facilities had begun prior to October 16, 2001. The court found that "the February 19, 2002 determination by the Board of Adjustment of Red Willow County that substantial construction had commenced prior to October 16, 2001 is supported by competent evidence." The court further found that the

decision of the Board of Adjustment was not illegal, arbitrary, or capricious, and the court "wholly and in total affirm[ed] the decision" of the Board of Adjustment.

## BACKGROUND

In 2001, Red Willow County was in the process of developing a comprehensive zoning plan and accompanying regulations, which would restrict the construction of confined animal feeding operations. Furnas County Farms was attempting to build a confined animal feeding operation in Red Willow County. Furnas County Farms was aware of the county's development of the comprehensive zoning plan and regulations through public advertisement and participation in public hearings and meetings relating to the regulations.

On September 24, 2001, the Red Willow County Planning Commission held a public meeting at which it reviewed final changes made to the Red Willow County zoning regulations. A motion was made to accept the comprehensive plan and zoning regulations as amended and to recommend their acceptance to the Board of Commissioners.

On September 25, 2001, the Board of Commissioners held a public hearing to consider the adoption of the comprehensive plan and zoning regulations. At that hearing, the Board of Commissioners was advised by a consultant hired by Red Willow County that the comprehensive plan and zoning regulations needed to be published and set forth in a final document incorporating the most recent changes. The consultant recommended that in order to provide sufficient time for publication and time to establish a zoning administrator's office, the effective date of the adoption of the comprehensive plan and zoning regulations should be postponed until October 16. A motion was made to include language in the comprehensive plan and zoning regulations identifying October 16 as the effective date for both regulations. This motion was seconded and passed.

Also on September 25, 2001, the Board of Commissioners passed resolutions Nos. 753 and 754. Resolution No. 753 provides in relevant part that a public hearing was held on September 25 regarding the comprehensive plan and that the comprehensive plan was thereby adopted by Red Willow County. Resolution No. 753 further provides that the resolution will take effect and be in

force from and after the publication of the resolution in book form and by reference in the official Red Willow County newspaper. Resolution No. 754 provides in relevant part that a public hearing was held on September 25 regarding the zoning regulations and that the zoning regulations were thereby adopted by Red Willow County. Resolution No. 754 further provides that the resolution will take effect and be in force from and after the publication of the resolution in book form and by reference in the official Red Willow County newspaper.

Publication for both resolutions took place on October 9, 2001. The front page of the zoning regulations reflects that the zoning regulations were adopted on September 25 and became effective on October 16. The zoning regulations themselves, however, make no reference to an effective date of October 16. Rather, article 14, § 1404, of the zoning regulations provides that the zoning regulations "shall take effect and be in force from and after its passage and publication according to law."

The record reflects that with respect to the Kircher property, Furnas County Farms expended $660 between August 1 and 6, 2001, for easements and a Department of Environmental Quality application fee, $10,844.66 on October 13 for concrete, and $23 on October 15 for an electrical inspection application. The record also reflects that with respect to the Geihsler property, $660 was expended on August 1 for easements and a Department of Environmental Quality application fee, $4,000 was expended on October 5 for a downpayment for the purchase price of the land, $115.25 was expended on October 15 for an electrical inspection application, and $653.10 was expended on October 15 for concrete. In addition, Furnas County Farms made two downpayments to Sand Livestock Systems, Inc., in the amount of $93,553 each on September 30. The purpose of these downpayments is not apparent from the record. The record also reflects that Furnas County Farms did not enter into purchase agreements to purchase the Kircher and Geihsler properties until October 4 and did not become record owners of those properties until December.

## ASSIGNMENTS OF ERROR

Hanchera assigns, restated, that (1) the district court erred as a matter of law in finding that the zoning regulations were effective

as of October 16, 2001, and not September 25, 2001, and (2) the record before the district court did not contain evidence showing that a nonconforming use existed prior to the effective date of the zoning regulations becoming effective.

## STANDARD OF REVIEW

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004); *Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

■ A district court may disturb the decision of a board of adjustment if the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. In deciding whether a board's decision is supported by the evidence, the district court shall consider any additional evidence it receives. *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992).

■ In appeals involving a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of a board of adjustment, the district court abused its discretion or made an error of law. *Id.* Where competent evidence supports the district court's factual findings, the appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

### STANDING

The Board of Adjustment argues that Hanchera does not have standing to bring the present action because his second amended petition, the operative petition, was not duly verified as required by § 23-168.04. Therefore, before embarking on our analysis of Hanchera's appeal, we must determine whether Hanchera's failure to verify his second amended petition deprives this court of jurisdiction. We conclude that it does not.

■ Section 23-168.04 provides in relevant part that "[a]ny person or persons, jointly or severally, aggrieved by any decision of

the board of adjustment . . . may present to the district court for the county a petition, duly verified, setting forth that such decision is illegal, in whole or in part, and specifying the grounds of the illegality." We have previously held that verification " 'is a purely procedural direction which is formal but does not go to the essence of the law with regard to requirements for jurisdiction of courts.' " *In re Interest of L.D. et al.*, 224 Neb. 249, 259, 398 N.W.2d 91, 98 (1986). The failure to verify a petition is not a defect that defeats the jurisdiction of a court. *Hiatt v. Menendez*, 157 Neb. 914, 62 N.W.2d 123 (1954). Thus, we conclude that Hanchera's failure to verify his second amended petition does not deprive this court of jurisdiction.

### WHETHER FURNAS COUNTY FARMS ACQUIRED A VESTED INTEREST IN A NONCONFORMING USE

Hanchera contends in his second assignment of error that the record does not support a finding that Furnas County Farms established a nonconforming use in the properties prior to the effective date of the Red Willow County zoning regulations. We agree.

█ A new zoning ordinance will not have retroactive effect where a landowner, in good faith reliance on existing zoning, has substantially changed position either by causing substantial construction to be made or by incurring substantial expenses related to construction, or both. *Whitehead Oil Co. v. City of Lincoln*, 234 Neb. 527, 451 N.W.2d 702 (1990). See *Thayer v. Town of Tilton*, 861 A.2d 800 (N.H. 2004). The burden is upon the landowner asserting a right of nonconforming use to prove that his use existed prior to the effective date of the ordinance. *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb 783, 157 N.W.2d 394 (1968); 1 Kenneth H. Young, Anderson's American Law of Zoning § 6.10 (4th ed. 1996).

█ While we have not previously had occasion to determine when good faith is lacking in a landowner's attempt at establishing a vested interest in a nonconforming use, other courts have done so. " 'Good faith,' as it is used in the nonconforming-use cases . . . means without knowledge of the pendency of a restrictive ordinance." 1 Young, *supra*, § 6.34 at 595. In *Town of Hillsborough v. Smith*, 276 N.C. 48, 56, 170 S.E.2d 904, 910 (1969), the North Carolina Supreme Court stated:

"[G]ood faith" . . . is not present when the landowner, with knowledge that the adoption of a zoning ordinance is imminent and that, if adopted, it will forbid his proposed construction and use of the land, hastens, in a race with the town commissioners, to make expenditures or incur obligations before the town can take its contemplated action so as to avoid what would otherwise be the effect of the ordinance upon him.

A number of courts have refused to find the existence of a nonconforming use where construction was commenced without good faith, in the sense that it was commenced with knowledge of the pendency of an ordinance which prohibited such construction. For example, in *Biggs v. Town of Sandwich*, 124 N.H. 421, 470 A.2d 928 (1984), the court held that good faith was lacking where the landowners were apprised of the proposed zoning changes prior to the initial construction.

In *City of Tucson v. Arizona Mortuary*, 34 Ariz. 495, 272 P. 923 (1928), the court rejected the contention that a vested right had been obtained where, prior to the completion of any material amount of construction, the landowner had been advised that a restrictive ordinance was pending. The court reasoned that the landowner "may not now be heard to set up any loss to it which arose from its actions *after* it had knowledge that the ordinance was being considered." (Emphasis in original.) *Id.* at 511, 272 P. at 929.

In *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 617 N.E.2d 1227, 187 Ill. Dec. 506 (1993), the court refused to find that a vested interest in the continuation of a prior zoning classification had been established where there was constructive notice of the proposed comprehensive zoning code and the majority of construction expenditures followed further notice and the enactment of the zoning code. See, also, *1350 Lake Shore Associates v. Mazur-Berg*, 339 Ill. App. 3d 618, 791 N.E.2d 60, 274 Ill. Dec. 264 (2003) (holding that property owner could not be said to have relied in good faith on probability that zoning certificate or building permit would be issued pursuant to current zoning once property owner was aware that amendatory zoning ordinance was to be introduced).

## CONCLUSION

The record in the instant case reveals that Furnas County Farms was aware that Red Willow County was in the process of developing regulations which would hinder, if not prohibit, its confined animal feeding operations. Furnas County Farms was also aware that such regulations had been adopted by the Board of Commissioners on September 25, 2001, but were not considered effective until October 16. It is obvious from the actions and statements of Furnas County Farms and its representatives that its construction activities, all of which took place after the passage of the zoning regulations on September 25, were an attempt to circumvent the applicability of the regulations. Under these facts, we cannot say that Furnas County Farms' actions were in good faith. We therefore find that Furnas County Farms did not obtain vested interests in either the Kircher or Geihsler properties and that the properties are subject to the Red Willow County zoning regulations. Accordingly, we reverse the decision of the district court and remand the cause with directions to the district court to remand the cause to the Board of Adjustment to reverse its decision.

Because we find that Furnas County Farms did not obtain a vested interest in the properties because it lacked good faith, we need not decide Hanchera's remaining assignment of error, specifically, whether the district court erred in finding the effective date of the zoning regulations was October 16, 2001. See *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003) (stating that appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., participating on briefs.