772 N.W.2d 545 (2009)
278 Neb. 508
Nancy CONLEY and Todd Conley, appellants,
v.
Thomas BRAZER and Kathy Brazer, husband and wife, et al., appellees.
No. S-08-974.
Supreme Court of Nebraska.
September 4, 2009.
*548 Brian C. Doyle and, on brief, Aimee J. Haley, of Fullenkamp, Doyle & Jobeun, Omaha, for appellants.
Alan M. Thelen, Deputy Omaha City Attorney, for appellee City of Omaha.
Donald P. Dworak, of Stinson, Morrison & Hecker, L.L.P., Omaha, for appellees Thomas and Kathy Brazer and Paradise Pet Suites, LLC.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
STEPHAN, J.

I. NATURE OF THE CASE
Appellants, Nancy Conley and Todd Conley, and appellees Thomas Brazer and Kathy Brazer are adjacent landowners in Douglas County, Nebraska. The Brazers applied for and received a building permit from Douglas County to construct a kennel on their property. The Conleys brought an action in the Douglas County district court to enjoin the Brazers' proposed construction. The Conleys alleged that the building permit was invalid due to deficiencies in the Brazers' application and that the county's extensions of the expiration date of the permit were not valid and effective. The district court found that the Douglas County building permit was "presumptively" valid and that therefore, the Conleys' proper recourse was to appeal to the Douglas County Board of Adjustment, not to the district court. The court granted the Brazers' motion to dismiss, and the Conleys timely appealed.

II. BACKGROUND

1. PARTIES AND PROPERTIES
The Brazers own and reside on property consisting of approximately 9.21 acres located in Douglas County. The Conleys' residential property is located immediately south of the Brazer property.
Since 1997, the Brazers have operated a dog grooming and breeding business on their property. In 2002, the business was expanded to include dog boarding; on average, one or two dogs were boarded per day. In 2003, the Brazers began developing plans to expand the boarding and grooming operation, and in 2006, they formed Paradise Pet Suites, LLC, for the purpose of developing and operating their expanded business. By 2007, the Brazers had decided to develop a business which would include pet grooming services, *549 a pet daycare, and private boarding services.
In February 2007, the Brazers applied for and were issued a Douglas County building permit in order to construct a new kennel on their property. At that time, their property was within the zoning jurisdiction of Douglas County. On March 1, 2007, the City of Omaha annexed Elkhorn, Nebraska, and as a result, Omaha's extraterritorial zoning jurisdiction was enlarged to include the Conley and Brazer properties. On April 18, a "Memorandum of Understanding" (MOU) was executed by a City of Omaha building official and the Douglas County director of environmental services. The MOU addresses building permits issued by Douglas County which, as of the date of annexation, were "still active" in that the projects authorized by them were in various stages of completion. The MOU provided that Douglas County inspectors would complete the inspection process on any and all permits that Douglas County issued prior to March 1, 2007, and that the City of Omaha would review requests for permits made after March 1 and issue all new permits.

2. COMMENCEMENT OF LITIGATION AND TEMPORARY RESTRAINING ORDER
On March 13, 2008, soon after they first learned of the Brazers' construction plans, the Conleys filed an action in the district court for Douglas County seeking declaratory and injunctive relief to prevent any construction pursuant to the Douglas County building permit. Named defendants included the Brazers, Paradise Pet Suites, certain parties having financial interests in the Brazer property, and the construction company retained by the Brazers to build the kennel. In an amended complaint, the City of Omaha and Douglas County were added as defendants.
The Conleys alleged that the building permit issued by Douglas County was invalid for various reasons and that to proceed with their proposed construction, the Brazers were required to obtain necessary permits from the City of Omaha, because its extraterritorial zoning jurisdiction had expanded to include the Brazer property as a result of the Elkhorn annexation. On March 14, 2008, the Conleys moved for an ex parte temporary restraining order prohibiting the Brazers from engaging in any construction activities pursuant to the permit. The district court granted the Conleys' motion and ordered that the Brazers cease and desist any construction pursuant to the February 2007 building permit issued by Douglas County.

3. TEMPORARY INJUNCTION
The Conleys also moved for a temporary injunction, and the district court conducted an evidentiary hearing on the motion. The following facts were established by the evidence received at that hearing:

(a) Douglas County Building Permit
On February 8, 2007, the Brazers submitted an application for a building permit to Douglas County for the construction of a "Building & Fence For Kennel." On February 9, Douglas County building inspector Mark Ekberg issued building permit No. 6664 in response to the Blazers' application.
The Douglas County zoning regulations in effect at the time of the Brazers' application required applications for building permits to be accompanied by two copies of the site plan, which should depict existing and proposed water and sanitary sewer facilities. The building permit application states that two sets of building plans and well and septic permits are required.
As a building inspector for Douglas County, Ekberg receives all building applications and conducts all building inspections and plan reviews. According to Ekberg, when an application for a building *550 permit is received, the permit is issued even if all of the required information has not been submitted. If an incomplete application is submitted, Ekberg conducts a "plan review," which results in a document that states all the items that must be addressed prior to actual commencement of construction. If the items on a plan review are not addressed prior to construction, Ekberg "issue[s] a stop order."
Ekberg's plan review for the Brazer project, which bears the same date as the building permit, notes that the permit was conditional upon the completion of several items, including a requirement that the Brazers obtain well and sanitary sewer permits through the Douglas County Health Department. Ekberg testified that the Brazers did not prepare and submit any site plans for their project, nor did they submit any proof of a septic permit, even though the application states that site plans and permits were required.
The supervisor of sanitary engineering for the Douglas County Health Department testified that he supervises permits for septic systems and wells and that no permit has been applied for or issued for the Brazer property. According to the supervisor, there is no septic system available on the Brazers' site, and a septic permit would be required to construct one. He testified that according to Douglas County zoning regulations, "the septic and well permit has to be issued before any building permit" so that his department "can review the public health implications" of construction. The planning and zoning coordinator for Douglas County Environmental Services, who is Ekberg's supervisor, also testified that Douglas County zoning regulations require the septic permit to be issued prior to the issuance of a building permit.
Douglas County regulations, the building permit application, and the building permit issued to the Brazers state that issued permits expire after 90 days if the work described in the permit has not begun and expire after 1 year if the work has not been completed. Ekberg testified that the Brazers did not do any construction on the kennel project referred to in the permit during 2007 and did not complete the project on or before February 9, 2008. Douglas County has adopted the 2000 International Building Code, which provides that extensions of permits can be made when a written extension request demonstrates "justifiable cause." Entries in the Douglas County Environmental Services Department's "Permit Record Report" reflect that the Brazers were granted permit extensions on May 1, July 2, and December 21, 2007, and February 5, 2008. Ekberg acknowledged that the requests for extensions were made verbally by the Brazers and their contractor and that Ekberg made written notations indicating the requests were granted.

(b) Rezoning
In February 2007, the Conley property was zoned "Agriculture  Farming 2" or AF-2. The Brazer property was zoned "Agriculture  Farming 1" or AF-1. Douglas County zoning regulations in effect as of June 14, 2005, permit private and commercial kennels in an AF-1 zone, provided the facilities are at least 100 feet from the property line and 300 feet from any AF-2 zone.
On November 30, 2007, the Brazers applied to the City of Omaha for rezoning of their property from Douglas County AF-1 to City of Omaha "Development Reserve," or DR district. With a conditional use permit, a kennel is permitted in a DR district. On December 3, the Brazers applied to the City of Omaha Zoning Board of Appeals for a waiver to split their 9.21 acres of real property into two lots. The first proposed lot was 2.01 *551 acres and included the existing Brazer residence and outbuildings. The second proposed lot was 7.20 acres; it contained no improvements and is the site of the Brazers' proposed construction. The waiver application stated that the Brazers were "[r]equesting a lot split that doesn't meet the code under Douglas County Regs but does under City of Omaha DR zoning." Both applications were approved by the City of Omaha. The property was rezoned to a DR district and split into two lots. On December 31, the Brazers deeded the second lot to Paradise Pet Suites.
Following the evidentiary hearing, the district court entered an order finding that "the Conleys may be entitled to the relief sought." The court entered a temporary injunction in order to maintain the status quo, which it described as "not having a kennel built on ... the Brazer's [sic] property pending the outcome of the litigation." The court conditioned the temporary injunction on the Conleys' posting a bond in the amount of $1,000.

4. MOTIONS TO DISMISS
The City of Omaha and Douglas County were joined in the case as defendants in an amended complaint filed after entry of the temporary injunction. The City of Omaha filed an answer in which it admitted that the Brazer property fell within its 3-mile extraterritorial zoning jurisdiction by virtue of its annexation of Elkhorn on March 1, 2007. Douglas County filed an answer asserting various defenses, including that the Conleys' claim was barred by their failure to file an appeal to the Douglas County Board of Adjustment pursuant to Neb.Rev.Stat. § 23-168.02 (Reissue 2007). The county also raised this issue in a motion to dismiss.
The Brazers and Paradise Pet Suites, hereafter collectively referred to as "the Brazers," moved to dismiss on the grounds that the Conleys failed to state a claim upon which relief can be granted and that the district court was without subject matter jurisdiction because the Conleys had not "exhausted the requisite administrative remedies and appeal process." The Brazers also filed a motion to vacate the temporary injunction and determine damages resulting from its issuance and filed a motion to increase the amount of the bond.
The district court conducted an evidentiary hearing on the motions filed by the Brazers and the county. The Brazers offered evidence relating to all three motions. This evidence included affidavits of Kathy Brazer, Ekberg, and the president of the construction company retained by the Brazers. The Conleys objected to this evidence, and the court reserved ruling. The Brazers also offered five exhibits which had been received at the temporary injunction hearing, which the court received.
The Conleys offered several exhibits, including exhibit 65, a copy of a conditional use permit application submitted by the Brazers to the City of Omaha on May 12, 2008. The Brazers objected on grounds of relevance, hearsay, and lack of foundation, and the district court reserved ruling. The Conleys also offered a transcript of testimony from the temporary injunction hearing and all exhibits received at that hearing. The Brazers' counsel, who said he had not yet seen the transcript, objected on grounds of hearsay, lack of foundation, and legal conclusion, and the court reserved ruling. No parties objected to the offer of exhibits previously received, and while the record is somewhat ambiguous, it is our understanding that they were received. The Conleys requested and were given leave to conduct additional discovery and offer additional evidence in response to the motions. The court granted the Conleys' motion and continued *552 the hearing, noting that the Brazers' motion to dismiss should be treated as a motion for summary judgment, because evidence had been offered in support of the motion to dismiss and all parties should have an opportunity to offer evidence pertinent to the motion.
At the close of this hearing, the court took the county's motion to dismiss under advisement. In an order entered July 14, 2008, the court overruled this motion, concluding that an appeal pursuant to § 23-168.02 was not the Conleys' exclusive remedy for the reasons discussed in our opinion in Johnson v. Knox Cty. Partnership[1] and the authority provided by Neb. Rev. Stat. § 23-114.05 (Reissue 2007).
At the continued hearing on the Brazers' motions held on August 12, 2008, the Conleys offered additional evidence, including an affidavit of their attorney stating that the Brazers had not responded to requests for admissions, copies of which were attached to the affidavit. The Brazers objected on the ground of relevance, and the court reserved ruling.
In an order entered on September 5, 2008, the district court received certain exhibits on which it had reserved ruling, including the transcript of testimony at the temporary injunction hearing. The order stated that the court would not receive two exhibits offered by the Conleys: exhibit 65, the conditional use permit application, and exhibit 68, the affidavit of counsel regarding requests for admissions. The court granted the Brazers' motion to dismiss, reasoning that the Conleys did not appeal the issuance of the building permit pursuant to § 23-168.02, that the building permit was "presumptively valid" on the date that Omaha's zoning jurisdiction was extended by the Elkhorn annexation, and that the Brazers had met their burden of demonstrating no genuine issue of material fact and entitlement to judgment as a matter of law. The district court therefore vacated the temporary injunction and dismissed the case as to all defendants.
The Conleys perfected this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[2]

III. ASSIGNMENTS OF ERROR
The Conleys assign, restated and consolidated, that the district court erred in (1) granting summary judgment to the Brazers and dismissing their complaint, (2) finding that after March 1, 2007, the Douglas County Board of Adjustment had authority over the Brazers' building permit and authority to hear the Conleys' appeal, (3) finding that the Conleys were required to appeal to the Douglas County Board of Adjustment, (4) finding that the building permit issued by Douglas County was valid and created grandfather rights for the Brazers, (5) finding that the building permit allowed for retail sales and pet grooming, (6) finding that the MOU between Douglas County and the City of Omaha was valid, (7) dissolving the temporary injunction granted to the Conleys, (8) finding there was no evidence of zoning violations by the Brazers, and (9) refusing to admit exhibits 65 and 68.

IV. STANDARD OF REVIEW
The district court correctly treated the Brazers' motion to dismiss as a motion for summary judgment, because evidence was presented by the parties and *553 received by the court.[3] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[5]
The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[6]
An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court.[7]
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.[8] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[9]

V. ANALYSIS

1. APPEAL TO DOUGLAS COUNTY BOARD OF ADJUSTMENT NOT REQUIRED
The Brazers argue that Neb.Rev. Stat. §§ 23-168.01 to 23-168.04 (Reissue 2007), which generally address the authority of county boards of adjustment, provide the exclusive procedure for challenging decisions relating to building permits. They argue that to challenge the validity of a building permit, one must first file a complaint with a zoning enforcement officer, whose decision may be appealed to a board of adjustment, which decision in turn may be appealed to the district court.
Section 23-168.02(1) states that "[a]n appeal to the board of adjustment may be taken by any person or persons aggrieved ... by any decision of an administrative officer or planning commission." (Emphasis supplied.) The word "may," when used in a statute, will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective.[10] The plain language of § 23-114.05 establishes that an *554 appeal to a board of adjustment is not the exclusive remedy for challenging a land use alleged to be in violation of zoning regulations. Section 23-114.05 states in relevant part:

In addition to other remedies, the county board or the proper local authorities of the county, as well as any owner or owners of real estate within the district affected by the regulations, may institute any appropriate action or proceedings to prevent such unlawful construction... or to prevent the illegal act, conduct, business, or use in or about such premises.
(Emphasis supplied.)
Our prior decisions support the view that an aggrieved party may use § 23-114.05 to seek injunction of land use in violation of regulations. In Johnson v. Knox Cty. Partnership,[11] landowners brought an action against the operator of a nearby cattle confinement facility and the owner of the land on which it operated, alleging that the facility violated county zoning regulations and constituted a private nuisance. While the landowners did not specifically invoke § 23-114.05, we noted that their complaint "includes factual allegations which, if proved, would entitle them to relief under this statutory remedy."[12] However, we agreed with the determination of the district court that the evidence did not support recovery under this theory.
Similarly, in Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.,[13] the Omaha Fish and Wildlife Club, Inc., filed a petition in district court seeking to enjoin the establishment by Community Refuse, Inc., of a solid waste disposal area on land owned by the county but not zoned for such a purpose. Community Refuse argued that the court was divested of jurisdiction by Nebraska's Environmental Protection Act, which governs operations relating to solid waste disposal. We disagreed, stating:
The statute pertaining to injunctions against a violation of a county zoning ordinance is clear. There must be such a procedure, because § 23-114.05 enacts it. In this way, county zoning ordinances are self-policing. Not only can the county officials begin a suit, but other "affected" owners of real estate also can do so.[14]
As "affected" owners of real estate, the Conleys were authorized by § 23-114.05 to bring an action to enjoin what they alleged to be a violation of Douglas County zoning regulations by the Brazers, specifically, the construction of the kennel pursuant to a building permit which the Conleys alleged was improperly issued, had expired, or both. This remedy is independent of the remedies offered by §§ 23-168.01 to 23-168.04. Further, as we noted in Omaha Fish and Wildlife Club, Inc., the jurisdiction of the district court to hear suits for injunction "cannot be legislatively limited or controlled."[15]
We briefly note that two cases cited by the Brazers do not support their position that the Conleys were required to appeal the issuance of the building permit to the Douglas County Board of Adjustment instead *555 of or as a prerequisite to suing for an injunction. In Hanchera v. Board of Adjustment,[16] we discussed the limited scope of judicial review of an appeal from a decision of a board of adjustment. The opinion does not address the question of whether an action for injunction could be maintained as an alternative remedy. The Brazers also argue that the legislative history discussed in Niewohner v. Antelope Cty. Bd. of Adjustment[17] shows that the Legislature intended that §§ 23-168.01 to 23-168.04 provide the exclusive procedure for challenging decisions relating to building permits. But the statements by the bill's introducer quoted in Niewohner refer to a board of adjustment as "`an avenue of appeal'" or "`an appeal mechanism.'"[18] The opinion itself and the legislative history quoted therein do not suggest boards of adjustment are the exclusive remedy for challenging zoning decisions or permits.
Accordingly, we conclude that the Conleys were not required to appeal issuance of the building permit to the Douglas County Board of Adjustment because under § 23-114.05, they may petition the district court for injunctive relief directly. Having determined that the Conleys' petition was properly before the district court, we now turn to the merits of their claim.

2. GENUINE ISSUES OF MATERIAL FACT PRECLUDED SUMMARY JUDGMENT
As a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed.[19] Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.[20] Where ambiguity exists in a summary judgment proceeding, an appellate court resolves such matters in favor of the nonmoving party.[21] Mindful of these principles and our standard of review requiring that we consider the evidence in a light most favorable to the nonmoving parties, in this case the Conleys, we conclude that there are genuine issues of material fact which preclude summary judgment.

(a) Issuance of Building Permit
Section 24 of the Douglas County zoning regulations in effect at the time of the Brazers' application states that written application for building permits "shall be accompanied by plans in duplicate, drawn to scale, showing ... existing and proposed water and sanitary sewer facilities, as may be necessary to determine and provide for the enforcement of this regulation." The building permit application states: "Include drawing of proposed building  dwelling requires two sets of plans (well & septic permit also required)."
Ekberg testified that the Brazers submitted a "set of plans" for the building with their building permit application, but did not prepare and submit any site plans. A May 1, 2007, comment in the "Permit *556 Record Report" for the Brazers' permit notes that someone from the construction company came to the permit office to request an extension of the building permit and that while there, "present[ed] a site plan version of project." The record does not reflect whether this "site plan version" would have been sufficient to meet the building permit application requirements, and the site plan presented at that time is not in the record.
A series of Douglas County authorities, including Ekberg, his supervisor, and the supervisor of sanitary engineering for the Douglas County Health Department, testified that well and sewer permits were required prior to the issuance of a building permit. Ekberg testified that the Brazers did not submit any proof of obtaining a septic permit with their building permit application, and the supervisor of sanitary engineering testified that no permit has been applied for or issued for the Brazer property.
According to Ekberg, building permits are granted as a matter of course when an application is made and any deficiencies in the application result in a "plan review." In the Brazers' case, Ekberg's plan review noted that the Brazers needed to obtain well and sanitary sewer permits through the Douglas County Health Department, among other things. Despite Ekberg's testimony that it was customary for his office to issue a building permit before all preliminary requirements were met with the understanding that no construction would begin until that time, Douglas County zoning regulations do not specifically provide for such a system.
Viewing these facts in the light most favorable to the Conleys, we conclude that a material issue of fact exists as to whether the Douglas County building permit was valid when issued.

(b) Extension of Building Permit
Section 24 of the Douglas County zoning regulations states:
Except where an extension has been obtained in writing from the Building Inspector, permits issued shall expire within ninety (90) days if the work described in the permit has not begun or the use applied for has not been established and within one year if the work has not been completed.
The building permit application includes a similar statement. Section 105.3.2 of the 2000 International Building Code adopted by Douglas County states that a "building official is authorized to grant one or more extensions of time for additional periods not exceeding 90 days each. The extension shall be requested in writing and justifiable cause demonstrated."
The Brazers' builder testified that no construction took place in 2007 and that construction was set to commence in March 2008, but was halted by the injunction. Ekberg testified that the Brazers did not do any construction under the permit in 2007 and did not complete the project on or before February 9, 2008, 1 year after the building permit had been issued. Ekberg's testimony regarding requests for extension of the building permit is at best ambiguous, but can be construed to mean that he received only oral requests for extensions of the building permit from the Brazers' contractor. Viewing these facts in the light most favorable to the Conleys, we conclude that a material issue of fact exists as to whether the Douglas County permit was validly extended by the Brazers.

(c) Alleged Zoning Violations
According to the Douglas County zoning regulations in effect at the time of the Brazers' permit application, "Private and Commercial kennel and facilities for the raising, breeding and boarding of dogs *557 and other small animals" are permitted in an AF-1 zone "provided that all buildings and facilities be at least 100 feet from the property line and 300 feet from any AF-2... District." Ekberg testified that when reviewing an application for a building permit, he will not "normally" issue a building permit to someone who has an existing zoning violation on their property. He also testified that at the time he issued the building permit to the Brazers, he was not aware that they had an existing kennel and grooming operation in their home within 300 yards of an AF-2 zone. He explained that had he been aware of a violation at the time, he would have issued the building permit only if the existing violation was eliminated.
A plat prepared by a surveyor at the request of the Brazers suggests their grooming and boarding operation, as it existed at the time they applied for the building permit, was located within 200 feet of the southern Brazer-Conley property line. This evidence presents a genuine issue of material fact bearing upon whether the building permit was lawfully issued and extended. Viewed in a light most favorable to the Conleys, there is evidence from which an inference could be drawn that the Brazers were in violation of zoning regulations at the time of the issuance of the building permit.
In summary, we conclude that the district court erred in granting a summary judgment of dismissal because there are genuine issues of material fact which preclude the extreme remedy of summary judgment.

3. OTHER ASSIGNMENTS OF ERROR
An appellate court will not consider an issue on appeal that the trial court has not decided.[22] We do not read the order of the district court as ruling on the legality or applicability of the Douglas County-City of Omaha MOU, and we therefore do not reach that issue.
An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. It may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[23] Because we have determined that entry of summary judgment was reversible error, we are not obligated to address the Conleys' remaining assignments of error. However, we exercise our discretion to address the issues involving the admissibility of counsel's affidavit regarding the failure of the Brazers to respond to requests for admission.
According to Neb. Ct. R. Disc. § 6-336(a),
[t]he matter is admitted unless, within thirty days after service of the request [for admissions], or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter. ...
Section 6-336(b) states in part, "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."
A party that seeks to claim another party's admission, as a result of that party's failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must also offer the *558 request for admission as evidence.[24] If the necessary foundational requirements are met and no motion is sustained to withdraw an admission, the trial court is obligated to give effect to the provisions of § 6-336.[25]
In City of Ashland v. Ashland Salvage,[26] we determined that a copy of the requests for admissions and an affidavit of one of the city's attorneys setting forth (1) the date on which the city served its requests and (2) the appellant's failure to provide timely responses to these requests were sufficient foundation. The same foundation was offered here.
On July 10, 2008, the Conleys served their first set of interrogatories, requests for production of documents, and requests for admissions. On August 7, the Brazers filed a motion for a 30-day extension of discovery deadlines to respond to interrogatories, requests for production of documents, and the requests for admissions which are the subject of exhibit 68. On August 12, at the summary judgment hearing, the Conleys' attorney offered as exhibit 68 her affidavit stating the date on which the requests were served and that as of August 12, no response had been made. The Brazers' motion for an extension of discovery deadlines was pending when the district court entered its final order, in which it denied the Brazers' motion as moot.
The Brazers objected to the affidavit on the ground of relevance. The district court's order states that exhibit 68 was not received, without providing any explanation for its ruling. We cannot determine from the record whether the relevance objection pertained to the subject matter of the requests for admission or to a contention that the matters were not deemed admitted because of the pending motion for extension of time to respond, or for any other reason. As to the former, we note that some or all of the matters on which the Conleys requested admissions are clearly relevant to the issues in this case. We express no opinion as to whether those matters are deemed admitted by the fact that the Brazers had not responded to the requests for admission as of the date of the affidavit. That determination should be made by the district court in the first instance on remand.
The Conleys also assign as error the district court's dissolution of its temporary injunction enjoining the Brazers from proceeding with their planned construction. The district court dissolved the temporary injunction based on the same reasoning that supported its entry of summary judgment. As explained above, we find that reasoning was erroneous. But whether the injunction should be reinstated is a question that depends on facts that may not be reflected in the record currently before us. Therefore, while we agree with the premise of the Conleys' argument, we decline to order that the injunction be reinstated. Instead, whether the temporary injunction should be reinstated is a matter left to the district court's discretion following remand, and we express no opinion on the matter.

VI. CONCLUSION
We conclude that the Conleys were entitled to seek injunctive relief without first resorting to the appeal procedure set forth in §§ 23-168.01 to 23-168.04. We further conclude that the district court erred in granting summary judgment to the Brazers, Paradise Pet Suites, Douglas County, *559 the City of Omaha, and the other named defendants because there are genuine issues of material fact pertaining to the Conleys' requests for injunctive and declaratory relief. We therefore reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
McCORMACK, J., participating on briefs.
WRIGHT, J., not participating.
NOTES
[1] Johnson v. Knox Cty. Partnership, 273 Neb. 123, 728 N.W.2d 101 (2007).
[2] See Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[3] See, Crouse v. Pioneer Irr. Dist., 272 Neb. 276, 719 N.W.2d 722 (2006); Wise v. Omaha Public Schools, 271 Neb. 635, 714 N.W.2d 19 (2006).
[4] Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009).
[5] Id.
[6] Vokal v. Nebraska Acct. & Disclosure Comm., 276 Neb. 988, 759 N.W.2d 75 (2009).
[7] Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007).
[8] Sturzenegger v. Father Flanagan's Boys' Home, 276 Neb. 327, 754 N.W.2d 406 (2008); Rankin v. Stetson, 275 Neb. 775, 749 N.W.2d 460 (2008).
[9] Sturzenegger v. Father Flanagan's Boys' Home, supra note 8; Aon Consulting v. Midlands Fin. Benefits, 275 Neb. 642, 748 N.W.2d 626 (2008); Law Offices of Ronald J. Palagi v. Howard, 275 Neb. 334, 747 N.W.2d 1 (2008).
[10] Pepitone v. Winn, 272 Neb. 443, 722 N.W.2d 710 (2006); State v. County of Lancaster, 272 Neb. 376, 721 N.W.2d 644 (2006).
[11] Johnson v. Knox Cty. Partnership, supra note 1.
[12] Id. at 130, 728 N.W.2d at 107.
[13] Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc., 208 Neb. 110, 302 N.W.2d 379 (1981).
[14] Id. at 112, 302 N.W.2d at 380.
[15] Id., citing Neb. Const. art. V, § 9.
[16] Hanchera v. Board of Adjustment, 269 Neb. 623, 694 N.W.2d 641 (2005).
[17] Niewohner v. Antelope Cty. Bd. of Adjustment, 12 Neb.App. 132, 668 N.W.2d 258 (2003) (superseded by statute).
[18] Id. at 137, 668 N.W.2d at 262, 263 (emphasis supplied).
[19] State ex rel. Wagner v. Gilbane Bldg. Co., 276 Neb. 686, 757 N.W.2d 194 (2008); Fossett v. Board of Regents, 258 Neb. 703, 605 N.W.2d 465 (2000).
[20] Sweem v. American Fidelity Life Assurance Co., 274 Neb. 313, 739 N.W.2d 442 (2007).
[21] Controlled Environ. Constr. v. Key Indus. Refrig., 266 Neb. 927, 670 N.W.2d 771 (2003).
[22] Pennfield Oil Co. v. Winstrom, 276 Neb. 123, 752 N.W.2d 588 (2008).
[23] Curry v. Lewis & Clark NRD, 267 Neb. 857, 678 N.W.2d 95 (2004).
[24] City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006).
[25] Id.
[26] Id.