IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SHEDRACK V. AMBASSADOR HEALTH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CONSTANCE SHEDRACK, APPELLANT,

V.

AMBASSADOR HEALTH OF OMAHA, APPELLEE.

Filed February 25, 2020.    No. A-19-421.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett, Moore, Rehm & Ockander, P.C., L.L.O., for appellant.

Quinn R. Eaton, Marnie A. Jensen, and Kamron T.M. Hasan, of Husch Blackwell, L.L.P., for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Constance Shedrack appeals from the order of the district court for Douglas County entering summary judgment in favor of Ambassador Health of Omaha. Shedrack alleged in her complaint that Ambassador Health terminated her employment in retaliation for her reporting understaffing conditions she believed to be detrimental to patient care and because she had exercised her rights under the Nebraska Workers' Compensation Act. On appeal, she argues that the district court was wrong in finding that she did not prove a prima facie case of retaliatory discharge and in finding that she failed to prove a causal connection between her report of unsafe work conditions and her firing. For the reasons that follow, we affirm the district court's entry of summary judgment in favor of Ambassador Health.

- 1 -

BACKGROUND

On July 20, 2017, Shedrack filed a complaint alleging that she was hired on August 6, 2016, by Ambassador Health to work as a Certified Nursing Assistant (CNA) in its skilled nursing facility and that her employment was unlawfully terminated on October 5, 2016. Shedrack alleged that her employment was terminated because she reported concerns about inadequate staffing levels and because she exercised her rights under the Nebraska Workers' Compensation Act. She acknowledged, however, that Ambassador Health's stated reason for her termination was "failure to maintain resident safety" after she was involved in a resident's fall.

On November 15, 2018, Ambassador Health filed a motion for summary judgment, alleging that there was no genuine issue of material fact insofar as it did not terminate Shedrack's employment in violation of public policy or because she engaged in protected conduct under the Nebraska Fair Employment Practice Act. Ambassador Health further alleged that there was no genuine dispute regarding it terminating Shedrack's employment because she violated company policy in transferring a resident, which resulted in the resident's injury. In support of its motion for summary judgment, Ambassador Health filed an annotated statement of undisputed facts. The district court received 37 exhibits and heard argument on the motion for summary judgment at a hearing on January 18, 2019.

Ambassador Health, which operates as a skilled health care facility, hired Shedrack in August 2016 and provided her with employee handbooks and policy manuals when she began her employment. Although Shedrack described her employee orientation as "haphazard," she acknowledged that she signed forms acknowledging her receipt of an employee handbook, corporate compliance manual, and code of conduct on August 16. She further acknowledged that her orientation covered transfer procedures for residents of Ambassador Health.

Ambassador Health's transfer procedure was called the "Catch a Falling Star" program, and Shedrack acknowledged that she was familiar with the program. The program specified that "a 'Falling Star[]' will be hung outside of the resident's room on the door frame" to indicate that the resident is at risk for falls. Under this circumstance, a care plan is written that addresses the resident's potential for falls. Shedrack said, "The star -- the star sign is for patients that are -- that are likely to fall. I remember this." Additionally, Shedrack said that each resident's mode of transfer was noted in their profile on the computer, which she checked on a daily basis.

On October 2, 2016, Shedrack was working as a CNA on Ambassador Health's third floor, which included the long-term care unit. The 24 residents of the long-term care unit lived in two hallways, each of which was staffed with one registered nurse and one CNA. Ambassador Health stated that on October 2, facility-wide there were 95 residents and 24 nursing personnel, or a ratio of one nursing personnel for every 3.96 residents. Nevertheless, according to Shedrack, no one immediately responded when a resident from the hallway to which Shedrack was not assigned activated her emergency call light. Shedrack testified that when a resident activated the emergency call light, all nursing personnel were paged even if they were not assigned to that resident's hallway. Shedrack said that she went to the resident's room to assist her because no one else was responding and "out of compassion to help."

Shedrack got to the resident's room and observed the resident's roommate exiting the restroom. The roommate had soiled herself, so Shedrack first helped the roommate clean herself before she cleaned the restroom itself. During that time period, no other nursing personnel responded to the resident's call light. Shedrack testified that she then helped the resident, whose right leg was amputated above the knee, sit on the toilet. She left the resident's room and returned when the resident again activated her call light to signal that she was finished using the restroom and needed assistance exiting. The resident began to lose her balance and fall as Shedrack helped her stand up from the toilet. Shedrack slowed the resident's fall, injuring her back in the process, which resulted in them both being "stuck" in the restroom. Because Shedrack could not stand erect, she called for help and estimated it took 5 minutes for other nursing personnel to arrive and assist them. Shedrack testified that the first person to arrive was the other CNA, who reported that she was outside smoking. Shedrack testified that she did not know where the two registered nurses were, but said "they must have gone to smoke as usual because there was nobody there." The resident suffered a fractured ankle, which required hospitalization, and Shedrack suffered a back injury. Shedrack's supervisor provided her with ibuprofen, and she used ice packs when she got home from work.

Shedrack testified that she initially hesitated to fill out an incident report as she thought that she would be fine. At her supervisor's urging, Shedrack did fill out an incident report, however, and stated that the injury could have been prevented if there was adequate staffing. She wrote, "There ought to be enough aides on duty considering the number of patients." She testified that she had also reported inadequate staffing previously. Shedrack further testified that at the time that she filled out the incident report, she had no intention of seeking workers' compensation benefits.

Shedrack testified that she had seen the resident transferred by only one nursing personnel on many occasions. However, the resident suffered a fall the previous week, which necessitated changing her transfer protocol to require the assistance of two nursing personnel. Shedrack acknowledged that "under the duress of the emergency, [she] did not see that" the transfer protocol for the resident had changed. She also testified that she did not see Falling Star signs posted in the resident's room.

Polly Stern, director of clinical services, testified that she spoke with Shedrack on October 3 and that Shedrack "said she was aware of the Falling Star. She saw the notes outside the door." According to the falling star instructions posted on the door, it was required that two people assist the resident with any transfer, and that a slideboard and gait belt be used. One staff person was to be in front and one in back to safely complete the transfer. According to Stern, Shedrack said she did not utilize a second person, a slideboard, or a gait belt, thus not following requirements. Stern further testified that Shedrack did not utilize the "Vocera" communication system to attempt to call for additional help. According to Stern, the other CNA and one of the registered nurses were across the hall assisting another patient at the time the resident and Shedrack were injured. She testified that the weekend supervisor and two restorative aides would also have been available to assist Shedrack, had she used the Vocera system to call for help.

Stern said that she never saw Shedrack's incident report because it was "handed in to HR." When Stern was directly asked, "did you look at this [incident] report?" she replied, "No." "I did

not see this [incident report] form, no." Stern acknowledged that she knew of Shedrack's injury, but she said that Shedrack did not mention to her any way in which her injury could have been prevented. Stern also testified that she received no indication that Shedrack might seek workers' compensation benefits.

Shedrack was suspended beginning on October 3, 2016, pending Ambassador Health's investigation of the incident. Thereafter, she was terminated on October 5. The stated reason for Shedrack's termination was "[i]ncorrect transfer precautions performed . . . resulting in a resident fall with significant injury." Stern testified that she was required to report the incident to the Department of Health and Human Services and Adult Protective Services, and she said that she was unaware of the reports' dispositions.

Shedrack did file a workers' compensation claim against Ambassador Health on December 8, 2017, and she received benefits. She testified that the benefits were 75 percent of her salary and lasted from the incident through February 2017.

The district court determined that Shedrack had failed to make a prima facie case of retaliatory discharge because she did not provide sufficient evidence of a causal connection between her protected activities and her termination. The district court stated:

> In this case, little evidence exists to establish a causal connection between Shedrack's complaints regarding staffing and her termination. Shedrack has demonstrated a temporal connection in that her incident report on October 2 contained a complaint about staffing and she was terminated on October 5. However, the inference of discrimination arising from this temporal connection is undermined because her termination is also temporally connected to Ambassador's legitimate, nondiscriminatory reason for termination. See *Skalsky v. Indep*[*endent*] *Sch*[*ool*] *Dist. No. 743*, [772 F.3d 1126 (8th Cir. 2014)]. Further, the evidence in the record does not establish that the persons responsible for the termination decision were aware of the staffing complaint in the incident report. Polly Stern testified via deposition that she never received the incident report. Shedrack spoke verbally to Stern during the pre-termination investigation, but did not allege during her deposition that she communicated her complaint about staffing at that time. Accordingly, there is no evidence in the record that Stern was aware of the staffing complaint connected to [the resident's] fall. Although two other individuals participated in the termination decision with Stern, Shedrack has not deposed those individuals nor provided evidence as to whether they were aware of Shedrack's staffing complaint in her incident report. Therefore, Shedrack is unable to establish a causal connection between her staffing complaint in the October 2 incident report and her subsequent termination.

> Shedrack's deposition also states that prior to the incident she complained to Stern about staffing on other occasions when she had to sign off on her orientation and when she was called to pick up shifts. . . . Shedrack also stated that "every" employee was complaining about staffing levels. . . . However, it is not clear whether these earlier complaints were based on beliefs that Ambassador was engaging in dangerous and unlawful activity with its staffing levels, or were more general complaints that the employees were dissatisfied with their hours. While Shedrack's incident report specifically alleges that an accident which resulted in resident injury could have been avoided by

adequate staffing. Shedrack has not alleged whether she raised patient safety concerns in her prior conversations about staffing. However, even presuming that the prior complaints qualified as protected activity. Shedrack's assertion that "every person was complaining about staffing levels" undermines her claim of retaliatory termination as she has offered no evidence that others who complained about staffing levels were also fired. . . .

On the record before this Court, there is not sufficient evidence of a causal connection between Shedrack's staffing complaint and her termination to satisfy a prima facie case of retaliatory discharge.

The district court then determined that even if Shedrack had proved her prima facie case, Ambassador Health had satisfied its burden in articulating a legitimate, nondiscriminatory reason for Shedrack's discharge from employment, thus shifting the burden back to Shedrack. The district court then found that Shedrack failed to prove that Ambassador Health's stated reason for terminating her employment was pretextual. Without evidence of pretext, Shedrack's claims could not survive summary judgment even if a prima facie case of retaliatory discharge had been proved. Accordingly, the district court entered summary judgment in favor of Ambassador Health.

Shedrack now appeals from the entry of summary judgment.

## ASSIGNMENTS OF ERROR

Shedrack assigns that the district court erred in finding that she had not proved a prima facie case of retaliation and that she had not produced evidence showing a causal link between her termination and her report of unsafe working conditions and her workplace injury.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

Shedrack assigns and argues that the district court erred in finding that she failed to prove a prima facie case of retaliatory termination. She contends that her showing of the temporal proximity between her protected activity and her termination demonstrated a causal link between the two and, therefore, proved her prima facie case. Ambassador Health argues in reply that Shedrack's showing of temporal proximity between her reporting alleged understaffing and her termination did not demonstrate the causal link necessary to prove a prima facie case of retaliatory discharge because there was no evidence that Stern or the other individuals involved in Shedrack's dismissal were aware of Shedrack's report. Absent a causal link and, thus, absent Shedrack making a prima facie case of retaliatory discharge, Ambassador Health argues that the district court

correctly entered summary judgment in its favor. We agree and, therefore, affirm the district court's order.

Our courts have applied the burden-shifting analysis originally applied to cases involving claims of employment discrimination to cases alleging retaliatory discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See, e.g., *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006). Under that analysis, the plaintiff must first prove a prima facie case of retaliation. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant-employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's discharge from employment. Third, assuming the employer establishes an articulated nondiscriminatory reason for the discharge of the employee, the employee maintains the burden of proving that the stated reason for discharge was pretextual and not the true reason for the employer's decision; i.e., that the discharge would not have occurred but for the employer's utilization of prohibited reasons. *Id*.

To establish a prima facie case of unlawful retaliatory discharge, an employee must show: (1) that he or she participated in a protected activity; (2) that the employer took an adverse employment action against him or her; and (3) that a causal connection existed between the protected activity and the adverse employment action. *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014). Because an employer is not apt to announce retaliation as its motive, an employee's prima facie case is ordinarily proved by circumstantial evidence. *Id*. With respect to the third element of a prima facie case--a causal connection between the protected activity and the adverse employment action--proximity in time between the protected activity and discharge is a typical beginning point for proof of a causal connection. *Id*.

In *O'Brien v. Bellevue Public Schools, supra*, the Nebraska Supreme Court determined that the employee established a causal connection between his reports of suspected asbestos and his termination of employment where there was approximately 1 month between the two events. The employee reported his suspicions of the presence of asbestos in May and June 2009. *Id*. He met with his immediate supervisor on July 7 and again with his supervisor and an administrator on July 13. *Id*. On July 16, the employee's employment was terminated. *Id*. Similarly, we found that temporal proximity alone circumstantially established the causal connection necessary for the employee's prima facie case in *Helvering v. Union Pacific RR. Co.*, 13 Neb. App. 818, 703 N.W.2d 134 (2005), where there were fewer than 3 weeks between the employee's protected activity and the termination of his employment.

The district court found that Shedrack presented sufficient evidence to satisfy the element that Shedrack had engaged in a protected activity and Ambassador Health did not dispute that Shedrack was subject to an adverse employment action by virtue of her termination. Therefore the focus of the district court and Shedrack's arguments on appeal relate to the issue of whether there is a causal connection between the protected activity and the adverse employment action. Accordingly, we focus our attention on the third element as well, whether a causal connection existed between Shedrack's protected activity and the adverse employment action.

Shedrack showed temporal proximity between her protected activity and the termination of her employment. Shedrack filled out the incident report on October 2, 2016, and raised the issue of understaffing and reported her own injury. She did not state any intent to file a workers'

compensation claim at that time. On October 3, she was suspended, and she was fired on October 5. Shedrack's firing came only three days after she engaged in protected activity, thus establishing temporal proximity.

However, temporal proximity is *only a beginning point* for proof of a causal connection. See *O'Brien v. Bellevue Public Schools, supra*. Regardless of the close proximity in time between Shedrack filing her incident report and being fired, there is no causal connection between the two events. To find a causal connection between the protected activity and the adverse employment action in this matter would be to ignore the very nature of causation. Shedrack's incident report went directly to Ambassador Health's human resources department. Stern, who was the person who investigated the incident and was the primary person who made the decision to terminate Shedrack's employment, testified that she had no knowledge that Shedrack had raised concerns of understaffing in her incident report. She also said that she had no knowledge that Shedrack intended to seek workers' compensation benefits. Shedrack's incident report and, thus, the protected activity she alleges on appeal, was not seen by Stern, who decided to terminate Shedrack's employment for violating Ambassador Health's resident transfer protocol. Therefore, Shedrack's report of understaffing concerns could not have caused her termination because the decision to terminate her employment was made without knowledge of her understaffing report. We further note, as did the district court, that Shedrack presented no evidence regarding the other persons who signed the written notice of termination. Therefore, she has provided no evidence of a causal connection between her complaints and their actions.

Even when viewed in the light most favorable to Shedrack, the evidence shows no causal connection between her protected activity of reporting understaffing concerns and the adverse employment action of termination. The evidence instead shows that her termination was due to her disregard of established policy and procedure regarding patient safety. Accordingly, we affirm the district court's finding that Shedrack failed to prove a prima facie case of unlawful retaliatory discharge.

We note that Shedrack argues, but did not assign as error, that the district court erred in finding that she failed to produce evidence indicating that Ambassador's reasons for terminating her were pretextual. We need not address this argument for two reasons. First, to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Anderson v. Babbe*, 304 Neb. 186, 933 N.W.2d 813 (2019). The pretext issue herein was not assigned as error. Second, having found that Shedrack has failed to set out a prima facie case of retaliation, there is no need to analyze the issue of pretext. An appellate court need not engage in analysis which is not needed to adjudicate the controversy before it. *Conley v. Brazer*, 278 Neb. 508, 772 N.W.2d 545 (2009).

CONCLUSION

Shedrack failed to prove a prima facie case of retaliatory discharge. Therefore, Ambassador Health was entitled to judgment as a matter of law. We therefore affirm the order of the district court which granted summary judgment to Ambassador Health.

AFFIRMED.